BETH HAMEDRESH HAGODOL OF NEWARK, NEW JERSEY, a corporation, et al., complainants-respondents,

*v.*

ALEXANDER ISSERMAN, defendant-appellant.

[Submitted February 17th, 1939.   Decided April 21st, 1939.]

Mr. *Louis Spiegel,* for the appellant.

Messrs. *Avidan & Avidan (Messrs. Ruback & Albach,* of counsel), for the respondent Beth Hamedresh Hagodol.

Mr. *Joseph Kahrs,* for the respondent United States Savings Bank.

The opinion of the court was delivered by

PARKER, J.

The factual situation is adequately stated in the opinion of the learned vice-chancellor.   For present purposes it is sufficient to say that when the Savings Bank, one of the com-

plainants herein, made its mortgage loan to the Congregation Rabbi Meyer Isserman in January, 1928, the land, or part of it, was subject to the covenant recited in the opinion below, which appeared of record, but was overlooked for some reason not clearly appearing in the case. This covenant ran in favor of Isserman, who, nevertheless, was actively instrumental in procuring the mortgage loan, joined in the bond as obligor, and expressly subordinated a mortgage held by himself, for $3,500, but made no mention of the covenant when the loan was closed or at any other time. Finally the bank foreclosed the mortgage, and in the bill Isserman was made a party. We fail to find any copy of the bill in the printed case, but gather from the opinion of the vice-chancellor (at *p. 337*), that Isserman was made a party as holder of a subsequent mortgage. The brief for respondent says "he was joined because he was the obligor on complainants' mortgage and also because he personally held two mortgages encumbering the premises * * *." The brief for Isserman is to the same effect. Isserman made no answer of any kind, and the cause proceeded to a sale; after which he intervened on the ground that he had not been served with process. His claim was overruled, and nothing more was heard of it. The mortgagee bank, purchaser at the sale, re-sold to the Beth Hamedresh Hagodol; and thereafter for the first time Isserman asserted the covenant by beginning an action of ejectment for breach.

The bill in this cause prays *inter alia* a perpetual injunction against assertion of breach of covenant on three grounds, stated by the vice-chancellor (at *p. 338*) as (1) estoppel, by actively representing to the bank that it was taking a mortgage on an indefeasible estate in fee; (2) constructive fraud and equitable estoppel in failing to inform the bank of his reversionary interest under the covenant, knowing the bank was lending on what it supposed was a fee-simple; and (3) that such reversionary interest though existent when the bill was filed but in fact unknown to the mortgagee and not mentioned in the bill, was cut off by the decree of foreclosure. The vice-chancellor passed the first two, and based the decree for the complainants on the third.

We are clear that the decree should be affirmed, but prefer to rest that affirmance on the ground of fraud and estoppel. The rule in the *Chadwick Case,* relied on by the vice-chancellor, was avowedly *dictum* when stated by Chief-Justice Beasley, whose decision was expressly rested on the ground (*43 N. J. Eq.* at *p. 624*) that the Island Beach Company had taken title expressly subject to the mortgage, and would not be heard to defend against it under a proprietary title acquired afterwards. In *Kiernan* v. *Jersey City, 80 N. J. Law 273, 280, 281,* the *dictum* was expressly passed by this court so far as it concerned interests paramount to the mortgage. The only other cases in this court cited below are *Board of Home Missions* v. *Davis, 70 N. J. Eq. 577; 71 N. J. Eq. 788,* in which the *dictum* of the *Chadwick Case* was held inapplicable; and *West New York Improvement Co.* v. *West New York, 88 N. J. Eq. 571,* which was a bill to quiet title under the statute, *4 Comp. Stat. p. 5399; R. S. 2:76-2 et seq.* By the language of that act the bill is to call on the defendant to set forth his claim: the subpœna ticket "stating the object of the suit and requiring the defendant, if he claims title or interest in or lien or encumbrance on the lands, to answer the bill, but not otherwise." No such clause is to be found in any extant form of foreclosure bill, particularly in connection with a paragraph bringing in a defendant merely as a holder of a subsequent mortgage. *Dickinson Chancery Precedents (Ed. 1894) 326 et seq., 331 et seq.* Chancery rules, 1938, schedule page 115. The form of foreclosure bill there printed pleads (paragraph 10) a later mortgage to James Jones and adds "any interest which said Jones may have in said lands is subject to the lien of complainant's mortgage," but we are not prepared to say that this clause amounts to a general challenge to Jones to disclose any other claim, particularly a prior claim, that he has, or forever after hold his peace; particularly as in foreclosure cases the statute (*Comp. Stat. p. 411 § 4; R. S. 2:65-15*) requires service with the subpœna to answer, of "a ticket, in writing, shortly making known for what cause the defendant is made such party." The various forms, for mortgagees, judgment creditors, lien claimants,

doweresses, &c., are set out in the form books, in language quite different from that of the ticket in a suit to quiet title.

But from the proven and admitted facts it is clear that Isserman, an interested party, took deliberate advantage of the ignorance of a prospective mortgagee to induce that mortgagee to lend on a title which he knew was defective, and deliberately concealed his interest therein until conditions had become favorable to a disclosure, and then, and only then, showed his true colors. His duty to speak was when he was negotiating the loan as the active agent. His concealment of the covenant was a deliberate fraud, which no court of equity should tolerate. On this ground the decree will be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, JJ. 14.

*For reversal*—None.